279 So.2d 612 (1973)
Frederick G. COX, Jr.
v.
Mrs. Alma Van Hook COX.
No. 47141.
Supreme Court of Mississippi.
June 12, 1973.
Sullivan, Bishop & Jolly, G.M. Binx Walker, Jackson, for appellant.
*613 Creekmore & Beacham, Jackson, for appellee.
GILLESPIE, Chief Justice:
This is an appeal by Frederick G. Cox, Jr., (Mr. Cox) from a decree of the Chancery Court of the First Judicial District of Hinds County awarding Mrs. Alma Van Hook Cox (Mrs. Cox) separate support and maintenance and denying Mr. Cox a divorce.
Frederick G. Cox, Jr., married Mrs. Alma Van Hook Conners in 1960. At the time of the marriage he had a son by his first wife, from whom he was divorced, and she had a daughter and a son by her first husband, from whom she was divorced. All of these children are now of age. Mr. and Mrs. Cox had no children of their marriage. At the time of trial, Mr. Cox was forty-five years old and Mrs. Cox was forty-five.
Mr. Cox has degrees in petroleum engineering and law. He maintained a law office in Laurel, Mississippi, prior to their marriage. After they married, he moved his office to Jackson. Mr. Cox has not been very successful as a lawyer and oil operator and at the time of trial was studying electronics with a view of going into business in the electronics field. Mrs. Cox holds a master's degree, and at the time of trial, was employed at a salary of $7500 per annum.
The suit was filed by Mrs. Cox for separate support and maintenance. Mr. Cox filed a cross-bill seeking a divorce on the ground of desertion. The chancellor found that Mr. Cox failed to establish grounds for divorce. He made a general finding that Mrs. Cox established grounds for divorce and was therefore entitled to an award of separate support and maintenance. In his opinion, he stated:
Over the years it is apparent that this marriage has become more and more turbulent and the Court is of the opinion that although the Complainant is not altogether free from fault that nevertheless the actions of the Defendant Cross Complainant have been such as to precipitate argument on the part of the Complainant and have, in fact, caused her to reasonably fear for her health if continuedly [sic] subjected to the course of treatment which precipitated the final separation of the parties.
The testimony on the causes of the separation of the parties on July 12, 1971, is lengthy. Mrs. Cox's version is next stated. She became afraid of Mr. Cox on account of his excessive drinking and bad temper, and his drinking was the "main thing," and he drank a half of a fifth a night. For the past few years he had become extremely unpleasant on eight or ten occasions each year, and she feared him because Mr. Cox is large and when he got drunk he would use physical force. She gave several instances of physical violence. His drinking got worse near the time of separation. He threw her against the wall several times and had slapped her, had kicked her out of bed and cursed her. On one occasion Mr. Cox had accused her of being unfaithful to him. They had arguments involving their children, and on one occasion Mr. Cox referred to Mrs. Cox's daughter as a lesbian. Shortly after this the question of separation arose. Mrs. Cox told Mr. Cox, "we need a separation." The tension had built up and she was afraid. When her daughter Jan went away to school on August 29, 1971, Mr. Cox, who had rented an apartment, returned home. She told him to stay away longer, that she was too upset, and she asked him to "let's stay separated at least six months." Mr. Cox came back and lived in their house from about September 4, 1971, until he was served with a writ in this case on September 15, 1971, and although the situation was tense, there was no quarrel or dispute during this time. She used to have two or three drinks almost every night, but rarely ever drinks now. Mr. Cox left on July 12, 1971, because she asked him to leave. "I was *614 afraid of him and something had to be done. I couldn't continue living like that." Mrs. Cox wanted to live apart "for a while  to get straightened out." She would probably have agreed to Mr. Cox's request for resumption of the marriage relationship if he had not attached the condition that Jan and Buddy (her children) could not live with them.
Mr. Cox gave a different version of the troubles between himself and Mrs. Cox. He did not deny the basic facts Mrs. Cox testified to concerning the quarrels and arguments, but attributed most of them to Mrs. Cox's nagging him because of his failure to earn more money and problems revolving around the children. In 1970, Mr. Cox earned about $5,000 from his efforts and received dividends from trusts to make his income about $18,000. He received $5,000 by invading the corpus of a trust his mother had set up for the three children of the parties to this suit. Mr. Cox's mother had been giving him funds each year. Although living beyond their means, at the time of the separation the parties were living in a four-bedroom house valued at $45,000. Mr. Cox had bought five automobiles for the family. Mrs. Cox was also working and earning several thousand dollars a year. At the time of his marriage to Mrs. Cox, he was a heavy drinker and she knew it, and she also drank, but less than he did. Mrs. Cox berated him because he did not produce more income, and arguments developed about the children, but he had a good relationship with Mrs. Cox's son. He blamed Mrs. Cox for selling their modest home and buying the larger and more expensive home in which they were living when they separated. The marriage relationship had deteriorated as a result of constant quarreling; Mrs. Cox would become hysterical and engage in tirades of verbal abuse. He had slapped her but she had slapped him as many times as he had slapped her, and such physical violence always occurred during arguments. Immediately after the separation he drank more for a couple of weeks, after which he reduced his drinking to a fraction of his previous consumption. He attributed his drinking in part to Mrs. Cox's conduct. He could not function emotionally because of Mrs. Cox's cursing, berating and belittling him. The quarrel preceding the separation on July 12, 1971, involved his reference to Mrs. Cox's daughter as a lesbian and his statement about Mrs. Cox being unfaithful to him in New Orleans. He regretted the "lesbian" statement made under stress of circumstances, and gave the basis for that statement and the one regarding the New Orleans incident. Before the separation, Mrs. Cox's mother suggested that he move out until Jan, Mrs. Cox's daughter, left for college; he understood that the reason for his moving out at that time was to avoid the conflicts between him and Jan. Mrs. Cox also suggested that he move out until Jan left for college. When he tried to return after Jan left the locks on the house had been changed and he had keys made so he could get in. He set a tape recorder to record what happened when he returned and the transcription of this encounter between Mr. and Mrs. Cox was transcribed as part of the record.
During the tape recording of the conversation between Mr. and Mrs. Cox, she stated she was going to get rid of Mr. Cox, called him a "sorry thing  the most pitiful excuse for a male I ever saw  you bug me being here. If you would just get your ass out  your big, sloppy, fat, nauseating ass  you disgust me  I just detest you." She called him a "son-of-a-bitch" and told him he had no decency whatever. She further said: "You smell  do you know that? You smell like a  you just smell." She called him an inconsiderate bastard. The Court listened to this tape and Mrs. Cox screamed and talked in an intemperate manner. She also said to Mr. Cox: "I'm going to get everything I can get and I'm going to get rid of you." We recognize that she did not know her words were being recorded and that he did.
*615 The question is whether Mrs. Cox was entitled to live apart from her husband and be supported by him. We have resolved this question favorably to Mr. Cox, which makes it unnecessary to reach other questions raised in the briefs.
The nature and purpose of separate support and maintenance is summarized in Bunkley and Morse's Amis On Divorce and Separation in Mississippi section 7.01 (1970 Supp.). The following paragraph was added to the text of section 7.01 following the decision in King v. King, 246 Miss. 798, 152 So.2d 889 (1963):
Separate maintenance assumes the continuation of the marriage and is a decree compelling the husband to support the wife, where she is separated through his fault, until he shall restore her to bed and board and treat her with such other conjugal kindness as is required in the marriage. In King v. King [246 Miss. 798,] 152 So.2d 889 (1963), it was held that when the separation is not primarily the fault of the husband, but was materially caused by the wife, this is a defense to the suit of the wife for separate maintenance. To hold otherwise would, as the Court stated, completely frustrate a basic principle of the law and of the family, which is the basis of our society; namely, that a wife should live with her husband and be supported by him in their marital domicile, unless he has forfeited that right by his own misconduct.
Under the King decision the rule is that where the wife's conduct materially contributes to the separation she is not entitled to separate support and maintenance. Our study of the testimony shows that Mrs. Cox's conduct was a material factor in the separation and this conclusion is consistent with the chancellor's finding that she was not free of fault. The duty to treat the husband with appropriate respect and conjugal kindness is just as binding on the wife as is the corresponding duty on the part of the husband. It is a prerequisite for separate maintenance that the wife be substantially without fault as far as the cause of separation is concerned. This cannot be said of Mrs. Cox.
Moreover, the record shows clearly that she was not afraid of Mr. Cox. It is also significant that the separation on July 12, 1971, was at the instance of Mrs. Cox on a trial basis.
The decree awarding Mrs. Cox separate maintenance is reversed and the bill of complaint is dismissed. The decree denying Mr. Cox a divorce on his cross-bill is affirmed.
Reversed in part and rendered; affirmed in part.
INZER, SUGG, WALKER and BROOM, JJ., concur.