# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CA-00389-SCT

*JAMES P. GRAY, SR.*

*v.*

*SHIRLEY A. GRAY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/23/1997 |
| TRIAL JUDGE: | HON. WILLIAM H. MYERS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID R. DANIELS |
| ATTORNEY FOR APPELLEE: | GARY L. ROBERTS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; VACATED IN PART AND REMANDED - 07/22/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: August 12, 1999 | |

**BEFORE PRATHER, C.J., BANKS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This case comes to this Court on appeal by James P. Gray, Sr. from a judgment of the Chancery Court of Jackson County, which awarded James's wife, Shirley, a divorce, child support, periodic alimony, a 50% equitable lien on all real property acquired by the couple, during the marriage, and attorney's fees. Because the chancellor was apparently skeptical about James's income, made no specific findings of fact as to James's income and did not state any particular reason why the award of child support exceeded the 20 percent of adjusted income presumption or state findings regarding the award of alimony, we must vacate in part and, remand for these specific findings. We also remand for a clarification by the chancellor regarding whether the real property lien awarded to Shirley was a fixed or a growing value lien. We affirm in all other respects.

## FACTS

¶2. James and Shirley Gray were married in 1980. Two children, James Gray, Jr. and Jonathan Michael Gray, were born of the marriage. During their seventeen year marriage, the Grays accumulated income-

generating real property.

¶3. On February 2, 1996, Shirley filed suit for divorce, alleging habitual cruel and inhuman treatment by James. James filed a counterclaim for divorce on February 28, 1996. A judgment of divorce was granted to Shirley on the ground of habitual cruel and inhuman treatment.

¶4. The judgment of divorce awarded Shirley $600 per month child support and $300 per month periodic alimony. The Judgment awarded that until the minor children are emancipated, Shirley would have sole use and possession of the marital home in which James would pay the mortgage. Additionally, Shirley received fifty percent equitable lien on all of the real property and $5,000 in attorney's fees. James received income from the income-producing properties and is responsible for the debt associated therewith. Further, James was ordered to manage the properties and provide monthly reports to Shirley.

¶5. Following entry of the judgment of divorce, James filed a Motion for New Trial or to Alter or Amend Judgment or in the Alternative for Findings by the Court. This motion was heard on July 22, 1997, and denied on February 2, 1998. Feeling aggrieved, James appeals and raises the following issues:

**I. THAT THE CHANCELLOR ERRED BY AWARDING CHILD SUPPORT TO THE APPELLEE IN EXCESS OF THE STATUTORY GUIDELINES.**

**II. THAT THE CHANCELLOR ERRED BY AWARDING PERIODIC ALIMONY TO THE APPELLEE.**

**III. THAT THE CHANCELLOR ERRED BY FAILING TO EQUITABLY DIVIDE THE MARITAL ASSETS.**

**IV. THAT THE CHANCELLOR ERRED BY AWARDING ATTORNEY'S FEES TO THE APPELLEE.**

**V. THAT THE CHANCELLOR ERRED BY NOT MAKING SPECIFIC FINDINGS OF FACT AS TO CHILD SUPPORT, ALIMONY OR PROPERTY DIVISION.**

### LEGAL ANALYSIS

**I. THAT THE CHANCELLOR ERRED BY AWARDING CHILD SUPPORT TO THE APPELLEE IN EXCESS OF THE STATUTORY GUIDELINES.**

¶6. James contends that his gross income was established at trial to be $14,000.00 annually or $912 per month. With this income James argues that the child support ordered by the court below amounts to more than sixty percent.

¶7. James argues that having made such a radical departure from the statutory guidelines, the court below failed to make the required findings of fact to justify it which constitutes manifest error.

¶8. Shirley argues that James had no verification of his alleged income. In fact, contends Shirley, the record is replete with evidence that James made substantially more than he related to the court. Shirley argues that James' testimony showed that he repeatedly traded cash back and forth with his sister's husband to the point where just four days prior to the filing of the Complaint for Divorce, he gave his brother-in-law approximately $32,000. While trial was pending, James loaned his brother-in-law $19,843.33.

¶9. Shirley contends that his purported income cannot be remotely believed since he has twenty-eight apartment units to manage and can expect an average monthly income of $350 per month per unit. Further, Shirley contends that James is living in one of the apartments without paying any rent for the benefit of both parties. Additionally, Shirley contends that if James had only been generating an income of $912 per month, he most certainly would not have purchased a new truck while litigation was pending. In short, Shirley contends that the chancellor had obvious skepticism about the true earnings and earning potential of the obligor and to reverse the chancellor on this issue would be to not only encourage fraud and concealment, but to reward the evasiveness of James Gray for his obviously clouded history of shady financial dealings.

¶10. An award of child support is a matter within the discretion of the chancellor and that determination will not be reversed unless the chancellor was manifestly wrong in his findings of fact or manifestly abused his discretion. *Clausel v. Clausel,* 714 So.2d 265, 266 (Miss. 1998); *Gillespie v. Gillespie*, 594 So. 2d 620, 622 (Miss. 1992). Furthermore, "[t]he process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." *Id.*

¶11. Miss. Code Ann. § 43-19-101 provides:

(1) The following child support award guidelines shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state:

| Number of Children Due Support | Percentage of Adjusted Gross Income That Should Be Awarded For Support |
| --- | --- |
| 1 | 14% |
| 2 | 20% |
| 3 | 22% |
| 4 | 24% |
| 5 or more | 26% |

(2) The guidelines provided for in subsection (1) of this section apply unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-101.

Miss. Code Ann. § 43-19-101.

¶12. In the case sub judice, the court does not relate in its decree or otherwise give proof of financial ability to the award, nor does the court make findings with regard to the needs of the children. Although, it may appear that the chancellor took into consideration the fluctuation of the income of James. James testified that his annual income is $14,000 or $912 per month adjusted. However, that was an income statement prepared in 1996 for the apartments that were rented for the particular year. James has twenty-eight rental units, the average rent is $350 per month. Further, James lives in one of the apartments without paying rent. At trial James testified that seven of the units were vacant. An

average of $350 per unit would make the gross monthly (rental) income $7,350 which is an amount more than James calculated on his income statement. Additionally, the fact that James wrote out a check for $32,000 to his brother-in-law just prior to the divorce complaint stating that he was paying back what was loaned to him was not corroborated by any evidence of an actual loan. Also, during litigation, James cashed a CD worth $20,000 stating that he loaned it to his brother-in-law which necessarily sounds suspicious when James alleges that he cannot meet his child support obligation ordered by the court.

¶13. In *Grogan v. Grogan*, 641 So. 2d 734, 740 (Miss. 1994), we upheld a chancellor's upward deviation from the guidelines due, in part, to the chancellor's skepticism about the parent's true earning capacity. That case is not dissimilar to the situation confronted by the chancellor in the case at bar.

¶14. However, without an accurate finding as to what James Gray's salary is, it cannot be determined whether the award was in excess of the statutory guidelines. The only information provided in the record is that James' adjusted income is $912 per month. Given that income, an award of $300 per month per child exceeds the statutory guidelines of 20%. If the chancellor found the application of the guidelines to be unjust or inappropriate, a deviation is permitted if it is accompanied by a written finding or specific finding on the record detailing the reasons for said deviation. It appears that the chancellor was skeptical of James' adjusted income, and rightfully so, nevertheless, he failed to specifically determine on the record the adjusted gross income. Without having the benefit of the chancellor's findings of fact, it cannot be said that the guidelines were either followed or not followed. Therefore, we vacate the judgment in part as to the award of child support, and we remand so that the chancellor may reconsider this issue and provide specific findings of fact to support his award.

## II. THE CHANCELLOR ERRED BY AWARDING PERIODIC ALIMONY TO THE APPELLEE.

¶15. Next, James contends that by awarding Shirley $300 per month in periodic alimony, ordering James to pay the note on the marital home, and by ordering him to pay $600 per month child support the court completely disregarded the factors set forth by this Court in *Brabham v. Brabham*, 226 Miss. 165, 176, 84 So.2d 147, 153 (1955). James argues that in *Brabham,* this Court adjured chancellors to consider nine separate factors in awarding periodic alimony, including the earning capacity of each party, the income of each party, the necessary living expenses of the husband and the fact that "the wife has free use of the home, furnishings and automobile." *Brabham,* 226 Miss. at 176, 84 So.2d. James contends that clearly the court below failed to consider these factors, given that, taken together with child support, the judgment required him to pay Shirley substantially more than his total income and made no allowance for his own needs.

¶16. Shirley argues that James overlooks the fact that the *Brabham* factors were expanded in *Hammonds v. Hammonds*, 597 So. 2d 653, 655 (Miss. 1992). Shirley contends that there are several factors that clearly favor an award of substantial periodic alimony. For example, the financial information concerning James' income shows that he makes or is capable of making more than twice as much as she makes. Shirley contends that James is in good health and has been living since the separation in a jointly owned rental unit without paying the cost of rent. Further, James gave his brother-in-law $32,000 from the joint savings of the parties just four days prior to the filing of the divorce. Additionally James loaned his brother-in-law another $19,843.33 while litigation was

pending.

¶17. Finally, Shirley contends that under these circumstances it is difficult to lend credence to James' argument that he should not have been required to pay permanent periodic alimony to his wife and that it cannot be plausibly argued that the Judge committed manifest error and an abuse of discretion in awarding the nominal sum of $300 per month.

¶18. Whether to award alimony and the amount of alimony are largely within the discretion of the chancellor. *Parsons v. Parsons*, 678 So. 2d 701, 703 (Miss. 1996); *Creekmore v. Creekmore*, 651 So. 2d 513, 517 (Miss. 1995); *Cherry v. Cherry*, 593 So.2d 13, 19 (Miss. 1991). We will not disturb the award on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error. *Parsons*, 678 So.2d at 703.

¶19. The following factors are to be considered by the chancellor in arriving at findings and entering judgment for alimony: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. *Armstrong v. Armstrong,* 618 So.2d 1278, 1280 (Miss. 1993); *Hammonds*, 597 So.2d at 655.

¶20. In the case sub judice, the chancellor awarded Shirley $300 per month in permanent periodic alimony. During the hearing on his reconsideration motion, James testified that he loaned the $20,000 CD to his brother-in-law, Mr. Woulard, and as of the date of the hearing, he has only received in repayment $7,000 or $8,000. However, this was not used to catch up his arrearage. There is questionable conduct on the part of James in how he calculated his income and further, the money he gave his brother-in-law. James appeared to have enough funds to purchase a new truck during litigation and also loan money. From the record, it appears that the chancellor applied the factors set out in *Armstrong* in awarding periodic alimony. However, given the questionable conduct of James and the calculation of his income and the loaning of money during litigation, this case should be remanded on this issue in order to fully develop James's income to provide support for the amount awarded.

## III. THE CHANCELLOR ERRED BY FAILING TO EQUITABLY DIVIDE THE MARITAL ASSETS.

¶21. In this next assignment of error, James contends that the Judgment of Divorce made no final division of property and, essentially left him with all of the responsibility and few of the benefits associated with the property. Moreover, contends James, the court below completely failed to consider the impact of the marital indebtedness on the division of the marital property.

¶22. This Court has established eight factors a chancellor needs to consider when dividing marital assets. *Collins v. Collins*, 722 So.2d 596, 599 (Miss. 1998); *Ferguson v. Ferguson*, 639 So.2d 921, 928 (Miss. 1994).

¶23. In this case, the chancellor reviewed all of the assets and liabilities of the parties. During the marriage, James and Shirley acquired real property. Two months prior to the marriage James purchased a home. Each of the parties had accumulated debts. In his judgment the chancellor awarded Shirley a lien in the amount of 50% in and to all of the property acquired by the parties including the home. However, the chancellor awarded James the right and obligation to sue and manage all of the said properties and, the income derived from the properties. James's management of the properties is to be in a manner consistent with the best interests of both parties. Further, James was ordered to provide an accounting showing rentals, vacancies, rental income, repair, maintenance and other expenses, and any other matters pertaining to the on-going management and operation of the properties. From this, it would appear that the chancellor intended there to be a 50% lien on the growing value of the property. The chancellor adjudged that Shirley be responsible for the payments of all and other outstanding debts listed on her financial declaration with the exception of the Discover card. The chancellor adjudged that James be solely responsible for the payment of debts or liabilities listed on his financial declaration including the debts associated with the real properties.

¶24. This Court has previously recognized that "an equitable division of property does not necessarily mean an equal division of property." *Collins*, 722 So.2d at 600; *Chamblee v. Chamblee*, 637 So.2d 850, 863-64 (Miss. 1994). A review of the record shows that the chancellor granted an equitable distribution of the marital assets. Each party was adjudged responsible for debts created by them individually, and there was a 50% lien as to all real property acquired by the parties during the marriage awarded to Shirley. However, the record is insufficient for this Court to be certain of the chancellor's finding regarding this issue. We remand for the chancellor to clarify whether the 50% lien was fixed as of the date of the divorce or is a growing value of the property.

## IV. THAT THE CHANCELLOR ERRED BY AWARDING ATTORNEY'S FEES TO THE APPELLEE.

¶25. James argues that the awarding of attorney's fees was manifest error because Shirley is gainfully employed, living mortgage free and receiving $900 per month in child support and alimony. Moreover, James contends that the evidence adduced at trial shows that Shirley had over $7,000.00 in a savings account.

¶26. Generally, an award of attorney's fees in a divorce case is left to the discretion of the trial court. *Sarver v. Sarver*, 687 So.2d 749, 755 (Miss. 1997)(quoting *Hemsley v. Hemsley*, 639 So.2d 909, 915 (Miss. 1994). It is well settled in Mississippi that if a party is financially able to pay an attorney, an award of attorney's fees is not appropriate. *Benson v. Benson*, 608 So.2d 709, 712 (Miss. 1992); See *Martin v. Martin*, 566 So.2d 704, 707 (Miss. 1990). Furthermore, if the record is insufficient to demonstrate the wife's inability to pay the attorney's fees, then an award of the fees is an abuse of discretion. *Benson*, 608 So.2d at 712; *Jones v. Starr*, 586 So.2d 788, 792 (Miss. 1991). An award of attorney's fees is appropriate in a divorce case where the requesting party establishes an inability to pay. *Robison v. Robison,* 722 So.2d 601, 605 (Miss. 1998); *Gambrell v. Gambrell*, 650 So.2d 517, 521 (Miss. 1995).

¶27. At trial Shirley testified that she has not paid any money except for the court reporter since she hired an attorney. Further, due to other financial problems as a result of James's failing to pay money the court ordered in its temporary order, Shirley has had to apply for food stamps which she only

qualified for $67. The record is replete with evidence demonstrating Shirley's inability to pay attorney's fees. Therefore, the chancellor did not err by awarding attorney's fees to Shirley.

## V. THAT THE CHANCELLOR ERRED BY NOT MAKING A SPECIFIC FINDINGS OF FACT AS TO CHILD SUPPORT, ALIMONY OR PROPERTY DIVISION.

¶28. James argues that the court below erred by not making specific findings of fact as required by Miss. Code Ann. § 43-19-103 (1993) in departing from the child support guidelines. Moreover, contends James, given this Court's enumeration of guidelines for division of property enunciated in *Ferguson v. Ferguson*, as well as the guidelines set forth in *Brabham* and *Armstrong* with respect to alimony, it was manifestly erroneous of the chancellor to omit specific findings of fact corresponding to such guidelines.

¶29. The court made no specific findings as to James's income. The chancellor offers no reason as to why the child support award exceeds the amount suggested by the statutory guidelines based on what James reported as his adjusted gross income. Further an alimony award of $300 per month along with the $600 child support award based on the reported income would leave James unable to maintain a decent standard of living. Therefore, the judgment should be vacated in part and remanded for specific findings as to James's income and expenses.

## CONCLUSION

¶30. This Court vacates the judgment below in part and remands this case so that the chancellor may be more specific with respect to James's income for a determination of child support and an alimony award as well as clarify whether the 50 percent lien was a fixed value or a growing value. In all other respects, we affirm the judgment below.

¶31. **AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**